UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY D. BROWN,

    Plaintiff,

v.

JOHN E. POTTER, Postmaster of the
United States,

    Defendant.

_____/

CIVIL CASE NO. 03-60295
HON. MARIANNE O. BATTANI

**OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I. INTRODUCTION**

Before the Court is Defendant's Motion for Summary Judgment (Doc. #33). Plaintiff filed a Four Count Complaint alleging that he was subjected to race and gender discrimination, retaliation, and a hostile work environment in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. Defendant seeks summary judgment, contending Plaintiff's claims are barred by *res judicata* and that Plaintiff cannot establish a *prima facie* case of discrimination, retaliation, or that a hostile work environment existed.

Jeffrey Brown was hired as a Mail Handler for the United States Postal Service (Postal Service) on December 28, 1984, and began work at the General Mail Facility (GMF) on January 25, 1985. Brown was hired through a program sponsored by the State of Michigan Vocational Rehabilitation Program (now the Michigan Department of Career Development) that placed handicapped individuals with various employers, including the Postal Service.

On May 14, 1999, Brown claims he was physically assaulted by coworker Norm McBride at the Detroit Air Mail Center (AMC), located at Detroit Metropolitan Airport. Brown called the Wayne County Airport Police to report he had been assaulted. Brown was removed from work by his long-time personal physician, Dr. J.K. Sachadeva, five days after the McBride incident occurred. He was off work for approximately three months, returning in August.

On July 28, 1999, Brown initiated the process of a United States Postal Service Equal Employment Opportunity case (EEO) by submitting a Postal Service form 2564-A, Information for Pre-Complaint Counseling. In the PS 2564-A, Brown alleged that he had been discriminated against based upon his "physical and/or mental disability, seizure disorder," describing the Norm McBride incident. Postal regulations require the form to be filed within forty- five days of the allegedly discriminatory incident; it was not filed for seventy-five days. 25 C.F.R. § 1614.105 (a)(1). The Postal Service EEO issued a Final Agency Decision on March 5, 2001, and dismissed Brown's complaint based upon 25 C.F.R. § 1614.105(a)(2) which provides for the dismissal of a complaint "that fails to comply with the applicable time limits." Brown filed an appeal of the dismissal to the Equal Employment Opportunity Commission's Office of Federal Operations on April 4, 2001. On August 14th, the EEOC Office of Federal Operations affirmed the dismissal of Brown's EEO complaint due to the failure to timely file his complaint of discrimination. On September 10, 2001, Brown filed a *pro se* complaint in the United States District Court for the Eastern District of Michigan ("Brown I"). He filed a Second Amended Complaint one year later that set forth three causes of action: Count I, Disability discrimination, failure to make reasonable accommodations in violation of the Rehabilitation Act; Count II,

Discrimination based on race in violation of Title VII, and; Count III, retaliation in violation of Title VII.

On August 8, 2003, Plaintiff filed the instant Four Count Complaint alleging he was subjected to race and gender discrimination, retaliation, and a hostile work environment in violation of the Rehabilitation Act and Title VII ("Brown II").  Plaintiff's complaint is based on an August 3, 2001, incident in which he was assigned to a work position he felt was not commensurate with his seniority.  He claims he sought assistance from his supervisor to resolve the issue.  However, Brown alleges that the supervisor instead allowed two black female casual workers avoid their job responsibilities by refusing to assist him at his work station.  He has also filed a number of EEO complaints and union grievances regarding the Postal Service's alleged disparate treatment based on his race and gender, and its failure to address his needs for accommodation because of his disability.  Finally, Plaintiff alleges he was retaliated against, in the form of undesirable work positions, because of his complaints to the EEO.

A time line, outlined below, sets forth Plaintiff's remaining factual allegations and a brief procedural history.

May 19, 1999 - Assaulted by older, Caucasian co-worker Norman McBride.

August 19, 1999 - Plaintiff was assigned to the AMC annex in Brownstown Township. Alleges constant harassment by other employees.

February 14 or 15, 2001 - Co-worker Jerome Record pokes Plaintiff and calls him a "former slave owner."

August 3, 2001 - Assigned to a work position not commensurate with his seniority; his supervisor refused to help, and instead sided with two black female casual employees.

November 28, 2001- Plaintiff files an EEO grievance regarding the August incident.

January 16, 2002 - Supervisor Mike Harrison does not allow Plaintiff to use a motorized cart to pull mail, and assigned him to work on the "sawtooth" dumping mail.

January 24, 2002 - Plaintiff files an EEO grievance regarding the incident on January 16th.

Early February 2002 - Co-worker Jerome Record gives Plaintiff a hug in an attempt to resolve the past disagreement.  Plaintiff walks off the job after taking offense to Record "laying his hands on" him.

February 19, 2002 - Plaintiff's personal physician determines that Plaintiff is totally disabled due to stress.

February 27, 2002; June 26, 2002; July 10, 2002; August 26, 2002 - Plaintiff attends Fitness for Duty Examinations held by Dr. Kenneth Kron.  Dr. Kron determines that Plaintiff is unfit to return to work.

Plaintiff applies for workers' compensation benefits, which the Postal Service opposed.

November 14, 2002 - Plaintiff is sent a Notice of Separation - Disability.

February 2003 - Plaintiff reports the Postal Service medical unit in an attempt to return to work.  Plaintiff was deemed not fit for duty.  This decision was grieved and resulted in an October 10, 2003, settlement, in which Plaintiff was allowed to return to the medical unit for another fitness for duty exam.

June 19, 2003 - Defendant files a Motion for Summary Judgment in Brown I.

August 8, 2003 - Plaintiff filed the instant Four Count Complaint alleging violations of the Rehabilitation Act and Title VII, retaliation, and that he was subjected to a hostile work

environment ("Brown II").

January 14, 2004 - Plaintiff is deemed fit for duty and cleared to return to work in February.

On March 12, 2004, this Court filed an Opinion and Order Granting Summary Judgment for Defendant in Brown I.  The opinion and order adopted a Report and Recommendation from Magistrate Judge Steven D. Pepe that recommended the case be dismissed because Brown failed to exhaust his administrative remedies, and because he did not articulate a viable discrimination claim.

## II.     STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

As the United States Supreme Court has ruled:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact.  See Hager v. Pike County Bd. of Educ., 286 F.3d 366, 370 (6th Cir. 2002).  "[T]he burden on the moving party may be discharged by 'showing' - that is, pointing out to the district court -- that there is an absence of evidence to  support the nonmoving party's case." Celotex,

5

477 U.S. at 325.

Once the moving party carries that burden, the burden then shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. FED. R. CIV. P. 56(e); Chao v. Hall Holding Co., 285 F.3d 415, 424 (6th Cir. 2002). "The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 256 (1986). The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. See Hunt v. Cromartie, 526 U.S. 541, 549 (1999); Sagan v. U.S., 342 F.3d 493, 497 (6th Cir. 2003).

"A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984)(citation omitted)(quoting BLACK'S LAW DICTIONARY 881 (6th ed. 1979)). To create a genuine issue of material fact, the nonmovant must do more than present some evidence on a disputed issue.

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

Anderson, 477 U.S. at 249-50. "No genuine issue of material fact exists when the 'record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" Michigan Paytel Joint Venture v. City of Detroit, 287 F.3d 527, 534 (6th Cir. 2002)(quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). The evidence itself need not

be the sort admissible at trial.  Tinsley v. General Motors Corp., 227 F.3d 700, 703 (6th Cir. 2000).  However, the evidence must be more than the nonmovant's own pleadings and affidavits.  Smith v. Campbell, 250 F.3d 1032, 1036 (6th Cir. 2001).  The mere existence of a scintilla of evidence in support of the non-movant is not sufficient; there must be sufficient evidence upon which a jury could reasonably find for the non-movant.  Anderson, 477 U.S. at 252.

**III.   ANALYSIS**

Defendant contends that because Plaintiff was aware of each claim he makes in the instant suit during the pendency of Brown I, he should have amended the Brown I complaint to include the current claims.  Thus, because the current complaint arises from the same set of operative facts, or facts that arose during the pendency of the earlier suit, *res judicata* bars relitigating issues that were actually litigated, or that could have been raised in the prior action.

The doctrine of *res judicata* is founded in the Constitution's Full Faith and Credit Clause and is implemented by the Federal Full Faith and Credit Statute, 28 U.S.C. § 1738.  That statute reads in pertinent part:

> Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

*Res judicata* consists of two preclusion concepts: issue preclusion and claim preclusion.  Migra v. Warren City School Dist. Bd. of Ed., 465 U.S. 75, 77 fn. 1 (1984).

> Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided.  See Restatement, supra, § 27. . . . .
> Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit.

Id.  As a general rule, the doctrine of *res judicata* "is applicable to a second suit involving the

7

same cause of action as that raised in the first suit, and will bar relitigation of issues which actually were or might have been presented before the court in the first action." Senior Accountants, Analysts, and Appraisers Ass'n v. City of Detroit, 231 N.W.2d 479, 481 (Mich. Ct. App. 1975).

"Claim preclusion is the doctrine by which a final judgment on the merits in an action precludes a party from bringing a subsequent lawsuit on the same claim or raising a new defense to defeat a prior judgment . . . .  It precludes not only relitigating a claim previously adjudicated; it also precludes litigating a claim or defense that should have been raised, but was not, in the prior suit." Mitchell v. Chapman, 343 F.3d 811, 819 (6th Cir. 2003) cert. denied, 542 U.S. 937 (2004).  Claim preclusion bars relitigation if the following four requirements are met: 1) the prior decision was a final decision on the merits; 2) the present action is between the same parties or their privies as those to the prior action; 3) the claim in a present action was or could have been raised in the prior action; and 4) where an identity exists between the prior and present actions, that is an identity of the facts creating the right of action and of the evidence necessary to sustain each action.  Id., see also Westwood Chem. Co., Inc. v. Klick, 656 F.2d 1224, 1227 (6th Cir. 1981).  "The doctrine precludes litigation of claims that 'were previously available to the parties, regardless of whether they were asserted or determined in the first proceeding.'" E.E.O.C. v. Frank's Nursery & Crafts, Inc., 177 F.3d 448, 462-63 (6th Cir. 1999) (quoting Brown v. Felsen, 442 U.S. 127, 131 (1979)).

Plaintiff's suit is barred by claim preclusion because all four elements are met.  First, the prior decision dismissing Plaintiff's claims was a decision on the merits.  Exhaustion of

administrative remedies is a condition precedent to filing suit in district court, and thus are analogous to statutes of limitations. Mitchell, 343 F.3d at 820. ". . . [A] dismissal for failing to comply with a statute of limitations is a decision on the merits for claim preclusion." Id.

The second prong is met because both suits involve an identity of parties. Third, the claims in the present action were, or could have been, raised in the prior action. Plaintiff contends that claim preclusion does not apply because this case, Brown II, involves separate incidents and different co-workers, and issues that occurred over two years after the factual basis that culminated in the filing of Brown I. Even if there were some alleged new facts that arose after the filing of Brown I, it does not preclude application of claim preclusion. Dubuc v. Green Oak Township, 312 F.3d 736, 749 (6th Cir. 2002). The key issue is whether Plaintiff could have amended his complaint in Brown I to include these new manifestations of alleged retaliation, failure to accommodate, and hostile work environment. Id. "The central purpose of claim preclusion is to prevent the 'relitigating of issues that were or could have been raised in [a prior] action.'" Mitchell, 343 F.3d at 824 (quoting Federated Dep't Stores, Inc., v. Moitie, 452 U.S. 394, 398 (1981)). All of the incidents Plaintiff now complains of occurred before the prior suit was dismissed.

> If retaliation persists after the victim prevails in an initial suit, or even if the victim does not prevail, then *res judicata* would not affect access to the courts. When the alleged additional manifestation of retaliatory animus occurs before adjudication on the merits of the initial suit, however, the victim is obliged to amend his or her initial complaint to add these new allegations.

Dubuc, 312 F.3d at 750.

Plaintiff also argues that because the Postal Service regulations require filing complaints with the EEO, the 2001 and 2002 incidents could not have been part of the Brown I lawsuit,

9

Brown I was initiated before the later incidents happened; thus, the Brown II claims are not subject to claim preclusion. Plaintiff cites no authority to support the argument that filing an EEO complaint preserves the factual basis for a discrimination claim from the effects of claim preclusion. Plaintiff's reliance on Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002), is unavailing. Morgan primarily dealt with how the timeliness of charges filed with the EEOC for violations of Title VII were to be assessed. The Court held that each discrete discriminatory act starts a new clock for filing timely charges with the EEOC. Id., at 113. However, each discrete discriminatory act does not wipe the slate clear for the purposes of claim preclusion. Rather, "[w]hen the alleged additional manifestation of retaliatory animus occurs before adjudication on the merits of the initial suit, . . . the victim is obliged to amend his or her initial complaint to add these new allegations." Dubuc, 312 F.3d at 750. Because Plaintiff could have amended his complaint to add the current allegations, the third requirement for claim preclusion is met. See Churchill v. Star Enters., 183 F.3d 184, 192 (3d Cir. 1999) ("Attorneys should organize litigation that they are pursuing to avoid claim preclusion.").

Finally, there is an identity of the facts creating the right of action and of the evidence necessary to sustain each action. Plaintiff does not present any new conditions, facts, or evidence in his Complaint that were not raised, or able to be raised, before Brown I was dismissed. Brown completed the EEO complaint process on all his outstanding complaints before Brown I was adjudicated on the merits. Therefore, because the claims raised in Brown II could have been raised during the pendency of Brown I, claim preclusion bars Plaintiff's claims.

**IV.     CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary

Judgment is **GRANTED.**

                                        s/Marianne O. Battani
                                        MARIANNE O. BATTANI
                                        UNITED STATES DISTRICT JUDGE

DATED: January 31, 2006

## CERTIFICATE OF SERVICE

Copies of this Order were mailed to Peter Osetek and Robert T. Grueneberg on this date by ordinary mail and/or electronic filing.

                                        s/Bernadette M. Thebolt
                                        DEPUTY CLERK